My name is Dimitrios Biller. I appear on behalf of the appellant in this case. There are two notes, two points I'd like to make this morning. One focuses on the district court's order. The other focuses on the arbitration clause. With all due respect to the district court, the order is riddled with errors of law and analytical errors of law. As a result, the district court order denies the appellant his rights under the Due Process Clause of the California State Constitution and the Equal Protection Law Clause of the State of California. There are four specific cases in the order that are disconcerting. The court, the district court cited to Bosak v. Woodward for the proposition that a writing was not required by the arbitrator. That's simply wrong. The arbitration clause specifically required that the arbitrator provide a written decision and the JAMS rules were incorporated into the arbitration clause, which also required a concise statement of decision. There was a written decision though, right, in this case that the arbitrator provided? That's right. And I maintain the written decision was inadequate because it did not discuss any affirmative defenses. So the court, I believe, said, well, it discussed it in essence, that it rejected them in essence and then went through the language and the arbitration agreement, the arbitrator's decision, which it pointed to as saying that that's where it said, no, the unclean hands, the equitable estoppel were not effective defenses. Your Honor, the opinion does not mention anything. The arbitrator's opinion and the district court's opinion does not mention anything about, well, the district court's opinion mentions unclean hands, but not the arbitrator's opinion. What the district court says, the arbitrator used, quote, different words. And he, quote, implicitly found against finding affirmative defenses. That's as if a superior court would provide a jury a special verdict form for negligence and comparative fault. And the jurors strike negligence and write stupid. And then on comparative fault, they strike comparative fault and write more stupid. And they give it back to the judge. They wrote more stupid over comparative fault. And I would submit to your honors that that special verdict form will have no more binding effect than the district court order should have in this case. He read into the arbitration clause in a way that nobody can read into. And more importantly, the arbitrator stated he did not adjudicate crimes and frauds. If he didn't adjudicate crimes and frauds, then there was no possible way for him to adjudicate unclean hands. Now, you give us an example of crime or fraud that Mr. Bill reduced before the arbitration. OK. Torter conducted safety tests for 30 years as part of an overall roof string test. That safety test was called for in discovery. The safety test was not produced for a period of over 20 years. I found that safety test. It would have made a big difference on cases, how cases were evaluated. Because the vehicles didn't pass the safety test. That's one example of fraud that Torter committed. Another example of fraud. So that was fraud on the people injured by Torter? Yes, sir. And that document, which I had at the time and I presented at the arbitration, was called for in a contempt hearing in a case in Texas, Penny Green v. Torter, in which I manage. I personally manage. So that's the type of fraud that we're talking about. So the arbitrator seemed to think that the severance agreement, you contractually obliged yourself not to disclose confidential information. Also under, I guess, California rules of provisional conduct, unless there was a crime about to happen, you have an ethical obligation to keep that information confidential. And so on that ground, it doesn't matter, this crime-fraud exception. What was wrong? The district court said, well, we can't look behind that reasoning. What was wrong with that conclusion? The California evidence code section 956 on crime-fraud is just an evidentiary rule that allowed me to present an abundance of evidence on crimes and frauds that were committed for a period of 20, 25 years. That's all it was. The evidentiary rule is not the same as your ethical obligation. I think that's the point the arbitrator was making. So there's a rule of professional conduct about disclosing confidential information. That seems to be what the arbitrator was focusing on. Well, I think what the arbitrator was focusing on, he merely said that the exception doesn't justify the disclosure. That's what he stated. But he went on to say that he was not adjudicating crimes or frauds at the time because the RICO out claim was not available. So he didn't even adjudicate crimes and frauds. So that went to the unclean hands defense. Is that correct? Yes. And so the arbitrator relied on the ethical obligation and said, attorney has an ethical obligation to keep this confidential. I guess also a contractual obligation in this case, in the case of the severance agreement. So even if that was wrong, given that it's the arbitrator's decision, why wasn't the district court right in saying under our arbitration rules can't reach that? I'm not sure I understand your question, but under the arbitration clause, the arbitrator was supposed to rule on claims and defenses under the laws of the state of California. There were three defenses that were submitted, at least three. The unclean hands, equitable estoppel, and reach a contract as a defense. The arbitrator did not rule on those three defenses. The arbitrator did say that the crime fraud privilege does not justify disclosure, but he did not rule on the unclean hands. And he did say, I'm not ruling on the crimes and the frauds as RICO's not available. There's no evidence in the award itself that touches upon a finding of defenses. Your Honor, if you would check and compare. Mr. Piller? Yes. Judge Goodman? Yes. Judge Goodman on the video. Can I have a question I'd like you to address? Sure. Before all your time runs out, and that is this. The Supreme Court and the Congress in the Arbitration Act, they're giving us only a narrow window for review. We cannot review an arbitral decision to see whether the arbitrator made a mistake in applying the law. We can only give relief if we conclude the arbitrator exceeded his or her powers. For example, manifest disregard of the law, which usually means something like the arbitrator knows what the law is and says what it is, but doesn't follow it. So how do you bring your arguments here into the standard that the arbitrators exceeded their powers or that they manifestly disregarded the law? Your Honor, thank you for asking that question. There are two cases, Ninth Circuit cases, Michigan Mutual Insurance Company and Lev Langstein v. Certain Underwriters of Lloyd's of London. In both those cases, the Ninth Circuit held that the parties are free to contract for arbitration. The parties are free to draft the rules and the procedures for the arbitration and put limitations on the arbitrator. If the arbitrator does not contain himself within those rules and limitations, then the award must be vacated. The Langstein case was handed down in 2010. The Langstein case and Michigan Mutual both relied on the language of exceed the powers. I think that's within the four corners of the Federal Arbitration Act. Your time has actually expired. Thank you. We'll give you a minute for rebuttals. Thank you. Good morning. Good morning. If I may please the Court, my name is David Schrader and it's my privilege here to represent Toyota along with the five individuals who Mr. Biller sued in Federal District Court. As your Honors are well aware, there exists in the United States a strong public policy favoring arbitration and favoring the respective arbitration awards. And the policy and the laws that implement it compel confirmation of the award in this case, which is exactly what the District Court did. Now, at the end of the day, the arbitration award in this case should be confirmed, whether it's analyzed under the Federal Arbitration Act or under the California Arbitration Act, because it easily meets both of those standards. In fact, by the express terms of the agreement at issue here, we're dealing with the Federal Arbitration Act and the award should be analyzed under that Federal Arbitration Act. That's the assumption that the District Court operated under during the entire case when it compelled arbitration and when it confirmed the award in the parties as well. And it was not until this case was appealed that there was an argument that there should be some other arbitration set of rules that should govern. So just to clarify, Mr. Biller did not – the argument was not raised below that the District Court should consider the arbitration under the California Arbitration Act? That's exactly right, Your Honor. That was not presented until the District Court confirmed the arbitration award in this case. Mr. Biller's opposition to our motion to confirm the arbitration award cited to and relied on the Federal Arbitration Act law. Now – I'm sorry. Mr. Schrader, I know you have thought how you want to present this, but could I ask you a question that bothers me, and that is the arbitrator's statement of the law, and that is that Mr. Biller is bound by a greater rule, the attorney's underlying fundamental duty to safeguard his client's confidence, attorney privilege or not. I might add as a footnote that I taught professional responsibility for 20 years. I never heard of this fundamental rule that trumps – this seems to be saying the client can pot a crime with the help of his lawyer, and the lawyer is bound to keep his mouth shut. I don't believe that was what Judge Taylor was saying here. As the – what Mr. Biller sought to disclose and did disclose were acts of his client that he alleged had occurred in the past, not acts of his client that he alleged were being – or that he was being asked to engage in in the future. Now, it would be similar, Your Honor, to a client coming in and telling his attorney in a criminal matter that he was involved in some sort of past criminal activity. The lawyer has no ability under that situation to go ahead and then disclose that information. It's protected by the attorney-client privilege. Well, that's true, but I certainly don't get – you've made a nice distinction, but the way the arbitrator has expressed his view of the law, it does look like a gross mistake in the law. Well, let me address that and then answer why that would not matter in any event. First, Your Honor, it is not under the circumstances of this case a mistake of the law to provide an attorney who not only is dealing with past activity of his client, but then signs an agreement saying, I will not disclose confidential information. If it's a crime that they were doing together, that agreement is worthless. Well, that's making an assumption that there was such a crime. Well, I know, but the way the arbitrator does it, it doesn't make any difference. It's his fundamental obligation, wipes out any ethical obligation to reveal the crime. I think, Your Honor, with all respect, that's reading too much into the award here. All right, well, you tell me exactly how it should have been qualified then. You've got it in front of you? I do, I'm looking at it. I found it an amazing paragraph. I'm looking at it now, Your Honor, which is that under the crime-fraud exception to the attorney-client privilege, an attorney can disclose future crimes that the client is asking to engage in, but that does not give the attorney the right to disclose prior alleged bad acts by his client. Now, what I'd also like to turn to is even if the arbitrator was incorrect in his statement of law here, that is not the task for this court to consider. The only, under the Federal Arbitration Act, the only task that the district court and this court then by extension has to look at is whether there was a manifest disregard of the law. That is, the arbitrator acknowledged a law and then proceeded to ignore it. Mistakes of law or errors of law are not reviewable under the Federal Arbitration Act. Well, I would read this. He does attempt to state what he thinks the law is and grossly mistakes it. Well, even if that were so, Your Honor, and I disagree with that statement that he has misstated it, it would not be grounds under the Federal Arbitration Act to reverse the arbitrator's award in this case. Errors of law are not reviewable under the Federal Arbitration Act. I thought you agreed that a gross misstatement was. No, Your Honor, I do not agree that a gross misstatement of law is reviewable. The only thing, under the manifest disregard exception, the only thing that is reviewable is if there is evidence that the arbitrator was aware of a law and intentionally disregarded it. That's the language of both the Ninth Circuit and the United States Supreme Court on the scope of the Federal Arbitration Act. But this is also sub-schooled, if I can interject. So I think I understand your position is that an error of law or even a gross error of law stated by the arbitrator doesn't give us grounds under the Federal Arbitration Act as a as a manifest disregard of law. But Mr. Biller argued that he thought a couple of Ninth Circuit cases applied manifest disregard of law to something like this. So could you distinguish the cases that he's relying on? I didn't make note of those, but I would refer to the Comedy Club case, for example, which is a Ninth Circuit case which discusses when manifest disregard of the law exists. And that is a situation where there is citation to the law by the arbitrator. I'm familiar with that case because I wrote the Comedy Club opinion, but I was hoping you might be able to help us respond to his argument that he made. I'm sorry, Your Honor, I did not make note of those two particular cases. He referred to Michigan Mutual Insurance and Lagstein. Right. And I'm not familiar with Mitchell Mutual Insurance, but the Lagstein case, actually the court there, the district court, did not confirm an arbitration award finding that there was a disregard of the law. And the Ninth Circuit in that case actually reversed that award, saying we are very limited in our ability to review arbitration awards. And mistakes of law, and I don't know if these words are used, but even gross mistakes of law are not reviewable. Could I also add that the paragraph of the arbitration award that we are focusing on here is preceded by the following. Even if Toyota's attorney-client privilege were lost. So there was no finding in this case that there were crimes and frauds. It was simply a statement following the even if preface and an extension of the arbitrator's belief that he would still, under that circumstance, which he didn't even find applied, be bound by this duty. You're actually over time. I see that I have a red light. I have no questions. Thank you. Thank you. Thank you for providing one minute. I appreciate it. Mr. Schroeder said something that's very disturbing. He said that I disclose information about past crimes. That's false. I cross-examined at the arbitration and at the deposition Irv Miller. Irv Miller is the computer, is the external communications vice president of Toyota. He wrote an e-mail on January 17th, 2010. Quote, we've got to come clean. We can't stop blaming the same manufacturer on this problem. We'll be lucky if NHTSA doesn't shut us down. That was in reference to sudden acceleration. I was the manager of the first sudden acceleration national class action in 2005. The crimes continue today. Thank you. Thank you. All right. The case of Miller v. Toyota Motor Corporation is submitted. And we'll next hear the case of Leong v. Square Enix of America.
judges: Noonan, Gould, Ikuta, Cjj